IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:15cr304 |
| | ) | |
| GABRIEL AGUILAR HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |

### **M E M O R A N D U M   O P I N I O N**

This matter came before the Court for bench trial on the Government's charge of one count of illegal entry after removal by Defendant Gabriel Aguilar Hernandez ("Defendant" or "Hernandez") in violation of 8 U.S.C. § 1326. A bench trial was held before this Court on December 21, 2015. The matter was then stayed pending resolution of *Welch v. United States*, 136 S. Ct. 1257 (2016) for guidance on the retroactivity of the Supreme Court's previous holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Welch* has subsequently been decided and the parties have rested on their previously submitted proposed findings of fact and law. Having carefully considered the evidence presented at trial and the parties' proposed findings of fact and conclusions of law, the Court finds Defendant guilty beyond a reasonable doubt of one count of illegal reentry after removal in violation of 8 U.S.C. § 1326.

## I. Background

The parties have stipulated that Defendant is an alien, he was previously removed from the United States, he was found thereafter within the Eastern District of Virginia after reentering the United States Voluntarily, and he did not have permission from the Attorney General or the Secretary of Homeland Security to apply for permission to reenter. (Gov. Exs. 1A-1D.) Defendant is an alien from Guatemala who had previously entered the United States illegally and was ordered removed from the United States on June 29, 2006. (Gov. Exs. 5B1, 5C1.) Defendant's 2006 removal proceedings took place on an expedited basis, without a hearing before an immigration judge, because immigration authorities at the Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE") determined that Defendant had previously been convicted of an aggravated felony within the meaning of 8 U.S.C. § 1227(a)(2)(A)(iii). (Tr. 29:7-9.) Specifically, ICE officials determined that in 2004, Hernandez had been convicted on charges of felony assault of a police officer in violation of Va. Code § 18.2-57 in the Arlington County Circuit Court. (Tr. 29:20-30:10; Ex. 4A3.)

On March 30, 2006, Gerald White, a deportation officer for ICE, ("Officer White") sent Hernandez a Notice of Intent to Issue a Final Administrative Removal Order ("the Notice"). (Tr.

35:25-36:6.)  The Notice contained a list of the rights which Hernandez was afforded in connection with his expedited removal proceedings.  (Gov. Ex. 5B1.)  These included the right to be represented by counsel, the right to request an extension of time to respond to the Notice, the right to rebut the charge, the right to request an opportunity to review the government's evidence, and the right to request withholding of removal based upon any asylum claim.  (*Id.*)  Additionally, the Notice informed Hernandez that he could seek judicial review of any final administrative order by filing a petition for review within 14 calendar days after the date that such final order was issued.  (*Id.*)  Finally, the Notice informed Hernandez that he could preemptively waive any such appeal by personally stating, in writing, his desire not to appeal before any final order was issued.  (*Id.*)

At trial, Officer White testified that ICE practice and policy was to provide the Notice in both English and Spanish.  (Tr. 36:11-37:22.)  Per the instructions in the Notice, Hernandez expressed his desire to contest the removal and submitted a letter to ICE officials in support of his rebuttal ("Defendant's Letter").  (Gov. Ex. 5B3.)  Defendant's Letter detailed the circumstances of his prior conviction, explained that he believed the he was erroneously convicted, and expressed his desire to remain in America because of a lack of

work in his home country. (Tr. 39:15-20; Gov. Ex. 5B3.) Defendant's Letter was handwritten in English. (Gov. Ex. 5B3.) ICE officials reviewed Defendant's Letter, found no legal basis to withhold his removal, and issued a final administrative order of removal on June 29, 2006. (Tr. 42:14-15; Gov. Ex. 5C1.) The Final Administrative Order was delivered to Hernandez in English on July 6, 2006 by personal service. (Tr. 43:12-23.) At that time, the ICE officer serving the Final Administrative Order on Hernandez checked a box on the order indicating that the petition for review was being "[w]aived by respondent." (Ex. 5C1; Tr. 44:10-16; 55:25-56:11.) Hernandez never filed a petition for judicial review.

Hernandez was warned that as a result of his removal, he would need to obtain permission from the Attorney General to reapply for admission to the United States. (Ex. 5C2.) Hernandez illegally reentered the United States in or about October 2011. (Ex. 3A3.) Hernandez was subsequently discovered by immigration officials in or about September 2015 after his arrest on a local charge in Prince William County. (Tr. 63:5-10.) Hernandez waived trial by jury and requested a bench trial. (Def.'s Waiver of Jury Trial [Dkt. 14].) The Government consented and the Court approved. The sole issue at trial was whether Hernandez could succeed with a collateral attack on his underlying removal order as allowed by 8 U.S.C. §1326(d).

4

After a bench trial on January 24, 2016, the Court determined that prudence dictated withholding judgment on Defendant's collateral attack until several cases pending before the Supreme Court and the Fourth Circuit addressing the application of the Supreme Court's recent holding in *Johnson* were resolved. Those cases have been decided, and the Court will now address Defendant's collateral attack in light of the recent guidance it has received from the Supreme Court and the Fourth Circuit.

## II. Legal Standard

8 U.S.C. § 1326(d) allows an alien to collaterally attack the validity of an underlying deportation order if he or she can demonstrate that:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Because the statute is written in the conjunctive, the defendant must satisfy each of these three requirements in order to succeed with a collateral attack on the underlying deportation order. *United States v. Wilson*, 316 F.3d 506, 509 (4th Cir. 2003), *abrogated on other grounds by Lopez v. Gonzalez*, 549 U.S. 47 (2006); *United States v. Ortiz*, 488 F. App'x 717, 717–18 (4th Cir. 2012).

5

The Federal Rules of Criminal Procedure require that "[i]n a case tried without a jury, the court must state its specific findings of fact in open court or in a written decision or opinion." Fed. R. Crim. P. 23(c). Accordingly, the Court first states its specific findings of fact before turning to its conclusions of law.

### III. Findings of fact

The Court found the testimony of Officer White credible. When asked if the Notice was issued only in English, Officer White testified that he "would have sent also a Spanish Translation of this document [the Notice]." (Tr. 36:12-13.) While Officer White admitted earlier that he could not remember his interactions with Hernandez specifically, he went on to explain that it was "part of [his] practice and policy" to include a Spanish translation of the Notice to an alien in Hernandez's situation, and he would have done so in this case. (Tr. 36:12-18.) Officer White testified that he would have provided Hernandez with a Spanish translation of the Notice because it was his belief that he was "required to" by law. (Tr. 36:20-24.)

While there is no copy of a Spanish translation of the Notice in Hernandez's administrative file, the Court credits Officer White's explanation that the translation is absent from the administrative file because it was not his practice to place

6

a copy of the translation into the administrative file at the time, nor did he believe it was necessary for him to do so. (Tr. 36:25 – 37:8.)

Officer White testified at trial that he had no personal knowledge of Hernandez ever receiving the Notice. (Tr. 37:24 – 38:1.)  However, Hernandez later returned the Notice along with a handwritten document in support of his rebuttal contesting the removal. (Ex. 5B1, 5B3.)  In light of this fact, the Court finds that Hernandez certainly received and understood the Notice.  Further, the fact that Hernandez understood the Notice well enough to promptly act upon it provides an objective indication that Officer White's testimony is accurate, and he did in fact attach the Spanish translation of the Notice. Accordingly, the Court finds that the evidence shows Hernandez did receive a Spanish translation of the Notice.

## IV.  Conclusions of Law

The Court will now address each of the three requirements of a collateral attack under 8 U.S.C. § 1326(d) in turn.

### A.  Exhaustion of Administrative Remedies

The Notice contained a section providing Hernandez with instructions for how to contest the determination that he was subject to deportation.  Per those instructions, Hernandez returned the Notice with a note expressing his desire to contest

7

the removal and a document in support of his challenge. Because it was determined that Hernandez was illegally present in the country and had committed an aggravated felony, Hernandez was not entitled to a hearing before an immigration judge. The only administrative remedy available to Hernandez was the opportunity to contest the finding of removability based upon an aggravated felony by submitting Defendant's Letter to the ICE officer in charge of his proceeding. Hernandez took that opportunity, and thus exhausted the administrative remedies available on the underlying deportation order.

### B. Improper Deprivation of Judicial Review

Hernandez did not seek judicial review of his initial deportation order. While he did not submit an explicit waiver of his right to appeal the initial order, he implicitly waived his right to judicial review of the order by failing to file a petition for review within 14 days of the date of the deportation order.

Generally, the exhaustion requirements of § 1326(d)(1) must be excused where "an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." *Ortiz*, 488 F. App'x at 718. Hernandez contends that any waiver of his right to appeal the underlying deportation order was unknowing and therefore invalid. Hernandez argues that his waiver was unknowing as he does not speak English and

he contends that he received only an English version of the Notice, the only communication through which he received notice of his right to seek judicial review.  (Def.'s Proposed Findings of Fact [Dkt. 34], ¶¶ 10-14.)  However, as discussed above, the Court has found that the evidence shows Hernandez did in fact receive a Spanish translation of the Notice.

The Court finds that the Government has shown by "clear and convincing" evidence that Hernandez was effectively apprised of his right to seek judicial review of his deportation order.  Accordingly, the Court finds that Hernandez's subsequent waiver of his right to judicial review was "knowing and intelligent."  Hernandez therefore has not demonstrated that he was improperly deprived of judicial review by the underlying deportation order.

### C. Fundamental Unfairness of Underlying Order

"To demonstrate fundamental unfairness" in the entry of the underlying removal order, "a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects."  *United States v. El Shami*, 434 F.3d 659, 664 (4th Cir. 2005).  Hernandez contends that the application of the allegedly unconstitutionally vague statutory definition of a "crime of violence" in 18 U.S.C. § 16(b) as incorporated into the definition of an "aggravated felony" in 8

U.S.C. §1101(a)(43) in his underlying deportation order violated his due process rights.

In *Johnson v. United States*, the Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) ("ACCA") was unconstitutionally vague. In *Welch v. United States*, the Supreme Court found that *Johnson* announced a substantive rule which applied retroactively on collateral review. The ACCA's residual clause is substantially similar to the residual clause in 18 U.S.C. § 16(b). The residual clause which was held unconstitutionally vague in the ACCA defines a "violent felony" as any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). 18 U.S.C. § 16(b) defines a crime of violence, in relevant part, as including "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Several circuit courts have already held that 18 U.S.C. § 16(b) is unconstitutionally vague in light of the Supreme Court's holding in *Johnson*. *See United States v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1115 (9th Cir. 2015); *United States v. Gonzalez-Longoria*, 813 F.3d 225, 235 (5th Cir. 2016), *reh'g en banc granted*, 815 F.3d 189 (5th Cir. 2016). The Fourth Circuit is

yet to consider the validity of 18 U.S.C. § 16(b) in light of *Johnson*, but given the uniform treatment § 16(b) has received at the hands of other circuits since *Johnson*, it appears that it is no longer valid law.

Although the Supreme Court determined in *Welsh* that *Johnson* should apply retroactively to sentencing decisions made under the ACCA, The Fourth Circuit recently questioned whether an administrative removal premised on what is later determined to be a flawed understanding of the definition of an "aggravated felony" is enough to rise to the level of a due process violation. In *United States v. Lopez-Collazo*, the Fourth Circuit held that "an error of law without more, will ordinarily not rise to the level of a due process violation." No. 15-4312 2016 WL 3080431, at *6 (4th Cir. June 1, 2016). While "there might be circumstances under which some courts would conclude that a misapplication of the law as it existed at the time" led to a due process violation, there is not necessarily a due process violation where "[t]he administrative removal order was actually premised on the <u>faithful application of existing law</u>." *Id.* (emphasis in original).

In any event, the defendant must do more than merely demonstrate a due process violation. "To establish fundamental unfairness under § 1326(d), a defendant must show that he suffered actual prejudice as a result of the due process

11

violations in the removal proceedings." *Lopez-Collazo*, 2016 WL 3080431, at *6. In other words, the defendant must show that "but for the errors complained of, there was a reasonable probability that he would not have been deported." *El Shami*, 434 F.3d at 665. Here, Hernandez has no way around the Fourth Circuit's decision in *United States v. Lopez-Collazo*. *Lopez-Collazo*, like this case, addresses a collateral attack on an expedited administrative removal order premised on an underlying conviction which qualified as an aggravated felony only because of 18 U.S.C. §16(b)'s residual clause. *Lopez-Collazo*, 2016 WL 3080431, at *1. Because a conviction for second degree assault in Maryland was clearly established as an aggravated felony under Fourth Circuit precedent at the time of the defendant's underlying deportation order in *Lopez-Collazo*, the Fourth Circuit found ICE's determination that the defendant had been convicted of an aggravated felony to be a faithful application of the law as understood at the time, and held that the defendant could "not have suffered prejudice because he was understood to be statutorily ineligible for relief from removal, and therefore there was no reasonable probability that he would not have been deported." *Id.* at *10.

Hernandez's underlying conviction is for assault upon a police officer in violation of Va. Code 18.2-57. In 2006, the time of his original deportation order, assault upon a police

12

officer in violation of Va. Code 18.2-57 was routinely held to qualify as an aggravated felony. *See, e.g.*, *Matter of Williams*, No.A41 359 137, 2006 WL 3088890 (B.I.A. Sept. 22, 2006)(unpublished)(holding that assault upon a police officer in Virginia qualified as a crime of violence under 18 U.S.C. § 16 and thus met the definition of an aggravated felony); *Matter of Ramirez*, No. A29 935 973 (Immig. Ct. July 23, 2006) (unpublished)(same). Hernandez was not understood to be eligible for relief from removal at the time of the original deportation order, and he therefore cannot demonstrate a reasonable probability that he would not have been deported.

      Because Hernandez cannot demonstrate that he was either improperly denied judicial review or that his previous deportation order was fundamentally unfair, he cannot succeed with his collateral attack on his 2006 deportation order. Because that deportation order remains valid and Hernandez has stipulated to the other elements of the crime, the Court finds Hernandez guilty of unlawfully reentering the United States following an order of deportation and removal in violation of 8 U.S.C. § 1326(a).

### IV. Conclusion

      For the foregoing reasons, the Court finds the Defendant, Gabriel Aguilar Hernandez guilty of one count of unlawfully reentering the United States following an order of

deportation and removal in violation of 8 U.S.C. § 1326(a).  An appropriate order will issue.

/s/

|  |  |
|---|---|
| June 23, 2016 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |